UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   OCT 19 2009   ★

LONG ISLAND OFFICE

Joseph Jones

80 West Main St

Kings Park NY 11754
NAME OF PLAINTIFF(S)

**COMPLAINT**
Jury Trail Demanded

Nature's Bounty INC

2100 Smithtown ave

NAME OF DEFENDANT(S)

**CV-09 4487**

**BIANCO, J.**

**WALL, M.J.**

This action is brought for discrimination in employment pursuant to (check only those that apply):

✓ ____

Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE**: *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

____

Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592, the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE**: *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

✓ ____

Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE**: *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

-1-

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

1.   Plaintiff resides at:

80 West Main St
Street Address

Suffolk          NY          11754          631 938-3399
County          State          Zip Code          Telephone Number

2.   Defendant(s) resides at, or its business is located at:

2100 Smithtown Ave
Street Address

Suffolk          RonKonKoma          NY          11779
County          City          State          Zip Code

3.   The address at which I sought employment or was employed by the defendant(s) is:

4320 Veteran Memorial Hwy
Street Address

Suffolk          RonKonKoma          NY          11779
County          City          State          Zip Code

-2-

4.   The discriminatory conduct of which I complain in this action includes
     (check only those that apply).

           _____        Failure to hire.

           ✓        Termination of my employment.

           _____        Failure to promote.

           ✓        Failure to accommodate my disability.

           _____        Unequal terms and conditions of my employment.

           _____        Retaliation

           _____        Other acts (specify): _____

*NOTE: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

5.   It is my best recollection that the alleged discriminatory acts occurred on:
     January 6, 2006.
     Date(s)

6.   I believe that the defendant(s) (check one)

          _____    is still committing these acts against me.

          ✓    is not still committing these acts against me.

7.   Defendant(s) discriminated against me based on my:
     (check only those that apply and state the basis for discrimination, for example,
     what is your religion, if religious discrimination is alleged)

    ☐  race _____    ☐  color _____

    ☐  gender/sex _____    ☐  religion _____

    ☐  national origin _____

    ☐  age _____    My date of birth is: _____
                                          Date

    ☑  disability Due too a epileptic Seizure that occured at work

*NOTE: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

-3-

8.    The facts of my case are as follows:

_Paper work as followed._

_____

_____

_____

_____

_____

_____

_____

_____

(Attach additional sheets as necessary)


**Note:**       As additional support for your claim, you may attach to this complaint a copy of
the charge filed with the Equal Employment Opportunity Commission, the New
York State Division of Human Rights, or the New York City Commission on
Human Rights.

9.    It is my best recollection that I filed a charge with the New York State Division of Human

Rights or the New York City Commission on Human Rights regarding defendant's

alleged discriminatory conduct on: __6 / 18 / 2006__ .
                                              Date


10.   It is my best recollection that I filed a charge with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct on: __9 / 18 / 2006__
                                                                              Date


-4-

**Only litigants alleging age discrimination must answer Question #11.**

11.   Since filing my charge of age discrimination with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct (check one),

_____   60 days or more have elapsed.

_____   less than 60 days have elapsed.

12.   The Equal Employment Opportunity Commission (check one):

_____   has not issued a Right to Sue letter.

✓   has issued a Right to Sue letter, which I
received on _8 / 10 / 09_
Date

**NOTE:**   Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity
Commission to this complaint.

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,
including injunctive orders, damages, costs, and attorney's fees.

_Joseph Jonas_
PLAINTIFF'S SIGNATURE

Dated: _October 19, 2009_

_80 West Main St_
Address
_Kings Park NY 11754_
_631 938-3399_
Phone Number  _631 399-9953_

-5-

# JONATHAN PAUL FIELDING

*Attorney and Counselor at Law*

129 Third Street
Mineola, New York 11501
Phone: (516) 479-0859
Fax: (917) 522-9592
Email: jfiel876@gmail.com

August 18, 2009

**VIA FIRST-CLASS MAIL**
Mr. Joseph Jones
P.O. Box 244
Mastic, NY 11950

RE:  **Joseph Jones v. Nature's Bounty, Inc.**
**Charge No. 520-2006-02611**

Dear Joseph:

Enclosed please find the EEOC's determination closing the above
matter and issuing a right to sue letter.  The EEOC has found
"probable cause" that discrimination occurred.  However, due to
Nature's Bounty's unwillingness to discuss settlement anywhere
near your demand, the EEOC has determined that conciliation has
failed.  Consequently, it has dismissed the matter.  If a case is
not filed in Federal Court within 90 days of the date of the
right to sue letter, your federal discrimination charges against
your former employer are forever waived.

I have not been retained for a Federal lawsuit and thus my
representation has ceased.  It was a pleasure to represent you in
this matter; I regret that the result of the investigation was
not more favorable.

Please contact me to discuss this in further detail at your
convenience.  Thank you for your consideration and cooperation.

Very truly yours,

Jonathan Paul Fielding

JPF:kb
Enc.

EEOC Form 161-A (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

To:  **Joseph Jones**
**15 Washington Avenue**
**Mastic, NY 11950**

From:  **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2006-02611** | **Joan Marchese,**<br>**Investigator** | **(212) 336-3782** |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
#### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Spencer H. Lewis, Jr.,**
**Director**

8/5/09
*(Date Mailed)*

Enclosures(s)

cc:  **NATURE'S BOUNTY, INC.**
**C/O Alan B. Pearl, Esq.**
**Portnoy Messinger & Pearl**
**6800 Jericho Turnpike, Suite 218E\**
**Syosset, NY 11791**

**Jonathan P. Fielding, Esq.**
**129 Third Street**
**Mineola, NY 11501**



**portnoy**
**messinger**
**pearl** & associates, inc.

6800 Jericho Turnpike • Suite 218E • Syosset New York 11791
❶ 516.921.3400        ❶ 516.921.6774
✉ info@pmpHR.com      🌐 www.pmpHR.com

*The Human Resource & Labor Relations Professionals*

August 25, 2006

Ms. Joan Marchese
Investigator
Equal Employment Opportunity Commission
New York District Office - 520
33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004

> Re:    Joseph Jones and Nature's Bounty, Inc.
>          EEOC Charge No. 520-2006-02611

Dear Ms. Marchese:

Please be advised that this office represents Nature's Bounty, Inc. (hereinafter "Respondent" or "NBTY") in the above referenced matter. NBTY submits this position statement with respect to the above-referenced charge filed by Joseph Jones (hereinafter "Jones" or "Charging Party").

NBTY's principal place of business is located at 90 Orville Drive, Bohemia, New York 11716. NBTY manufactures and distributes vitamins and vitamin products throughout the country.

## I.    BACKGROUND

Charging Party was hired on or about February 23, 2004 as a stock person for the third shift (11:00p.m. to 7:30a.m.) in Department 308 in the warehouse located at 4320 Veterans Memorial Highway, Holbrook, New York, 11741. Charles Triebel was his supervisor. Charging Party was next transferred to Department 301 in the warehouse located at 2005 Veterans Memorial Highway on March 21, 2004. Again, he worked the third shift and his supervisor was Abdool Ali. When the third shift at Department 301 was closed on December 12, 2005, Charging Party was transferred back to the third shift for Department 308 at the 4320 Building. Triebel was again his supervisor.

Charging Party was terminated on or about January 6, 2006, because Triebel informed his superior Chris Ganshaw (male, Assistant Manager), that he observed Jones appropriating a "Pure Alpine Punch Drink" product from the shelf and drinking it because he was "thirsty." Theft of product is a serious violation of Company policy.

Ms. Joan Marchese                               Position Statement (Nature's Bounty)
Page 2 of 6                                                        August 25, 2006

(NBTY's "Standards of Conduct and Corrective Action" Policy, attached hereto as
Exhibit A.)

     Mr. Ganshaw informed HR Representative Nicole Waldemar, who spoke to
Pamela Antos, NBTY's HR Director.  A decision to terminate for dishonesty was then
arrived at.

     Jones never brought to NBTY's attention that he suffered from any disability.
Therefore, NBTY's decision was not based on any impermissible factor.  NBTY denies it
acted irresponsibly and in violation of Charging Party's federally protected rights.

**II.**    **RESPONDENT'S SPECIFIC RESPONSES TO ALLEGATIONS IN
      CHARGING PARTY'S SDHR COMPLAINT**

*Paragraph # 1: I am a 28 year old male epileptic.*

  Answer:    NBTY is unaware that Jones suffers from epilepsy.  Only recently, with
           the filing of this charge, did this information come to its attention.

*Paragraph # 2: I began working for the above employer on February 23, 2004, when
I was hired as a stock person in Department 301.*

  Answer:    Jones started work as a stock person on or about February 23, 2004, was
           transferred to 2005 Veterans Memorial Highway on March 21, 2004, and
           transferred back to 4320 Veterans Memorial Highway on December 12,
           2005. Jones was in Department 308, not 301, when he was dismissed.
           (NBTY Payroll Change Form, dated March 19, 2004, attached hereto as
           Exhibit B.)

*Paragraph # 3: At the interview at which I was hired, I informed the employer that I
have epilepsy.*

  Answer:    NBTY denies knowledge or information sufficient to form a belief as to
           this allegation and as such, denies the allegation.

*Paragraph #4: On or about February 14, 2005, I suffered from an acute episode of
epilepsy in which I had grand mal seizures. I was hospitalized for two weeks, from
February 14 through February 28.*

  Answer:    NBTY denies knowledge of any grand mal seizure or the exact reason for
           the hospitalization.  The attached documents do not specify the nature of
           the illness. Charging Party was hospitalized (Brookhaven Memorial
           Hospital Progress Note, dated February 20, 2005, attached hereto as
           Exhibit C) and returned to work with a fitness note.

*Paragraph # 5: On or about March 1, 2005, I returned to work, and I provided my
employer with notes from my doctor documenting my illness. My supervisor, Abdul*

*Ali told me that I had been fired and that Nature's Bounty, Inc. had sent a letter to my home. When I asked Mr. Ali why I had been terminated, he told me that I did not qualify for Family Medical Leave Act leave because I had not been employed for one year.*

Answer:    NBTY denies the allegation contained in Paragraph #5. The medical documentation (see Script, dated March 8, 2005, attached hereto as Exhibit D) does not document the nature of the illness.  NBTY sent Charging Party a letter on February 24, 2005, which is self-explanatory. See Letter from Pamela Antos to Joseph Jones, dated February 24, 2005, attached hereto as Exhibit E. Supervisor Ali told Jones he wasn't eligible for FMLA leave, and needed a doctor's note that said he was fit for duty. Ali never told Jones he was fired.

*Paragraph # 6: Notwithstanding Mr. Ali's remarks, I continued to work at Nature's Bounty, Inc.*

Answer:    Charging Party was not terminated in 2005.  He returned to work after his hospitalization. The allegation is baseless and without meaning.

*Paragraph # 7: I take prescription medication to keep my epilepsy in check. When I take my medication, I experience difficulties with hydration, dizziness, drowsiness and shakes. Because of these side effects, I need to regularly drink fluids, especially when exerting myself.*

Answer:    NBTY lacks knowledge or information to form a belief as to the allegations, as such knowledge is solely within Charging Party's mind.

*Paragraph # 8:  In or about March 2005, I informed my supervisor, Mr. Ali, about the limitations I experience as a result of the side effects of my medication and I asked for a reasonable accommodation - that I be allowed to drink fluids when necessary for my medical condition.*

Answer:    NBTY denies the allegation contained in Paragraph #7; no such discussion took place.  See Answer to Paragraph # 11 for the policy on carrying "sports bottles."

*Paragraph # 9:  On or about December 12, 2005, I was transferred to Department 308, where I would work as a stock person. As a stock person, my duties included heavy lifting and exertion. My new supervisor was Mr. Charles Triebel.*

Answer:    NBTY admits the allegations concerning Charging Party's transfer and his supervisor, but deny that "heavy lifting and exertion" were a part of Charging Party's regular duties.  In fact, associates were instructed to seek assistance when any object that had to be lifted was considered "heavy" such as postal trays.  The most weight a person was asked to lift at Department 308 would be twelve bottles or a case of Isopure Alpine

Punch; most of the time, associates pick up small boxes of vitamin capsule packaging. The position at Department 308 was the same as had been performed by Charging Party at Department 301, although the work performed at Department 301 is generally less strenuous.

*Paragraph # 10: I explained to Mr. Triebel about the reasonable accommodation that I required in order to safely work.*

Answer:    NBTY denies the allegation contained in Paragraph #10; no such accommodation was requested of Mr. Triebel or anyone else.

*Paragraph # 11: At the warehouse to which I was transferred, employees were not allowed to carry drinks on the work floor. There was only one water fountain on the work floor.*

Answer:    NBTY denies the allegation contained in Paragraph #11; pursuant to Quality Control measures, NBTY permits its associates on the work floor to carry sports bottles (which are capped plastic squeeze bottles), but not open cans of soda, water, glass or the like.

*Paragraph # 12: On or about January 4, 2006, while I was working, I became dehydrated and suddenly felt extremely dizzy and weak. I experienced an "aura", the sensation that normally warns me that I am about to have an epileptic seizure. I knew that I had to rehydrate myself as quickly as possible to try to prevent the seizure. I took a bottle of sports drink from the stock shelf and immediately drank it.*

Answer:    NBTY denies the allegations contained in Paragraph #12 but admits that Charging Party took a bottle of "Isopure Alpine Punch" from the shelf and when confronted, told Supervisor Triebel "he was thirsty." Payroll Change Form, dated January 6, 2006, attached hereto as Exhibit F, and Separation Form, attached hereto as Exhibit G. Charging Party did not mention any illness or epileptic seizure. Charging Party did not offer to pay for the product, nor did he apologize for taking Company product off the shelf.

*Paragraph # 13: My supervisor, Mr. Triebel, saw what happened and told me I couldn't steal product. I offered to pay for it and told Mr. Triebel that I needed to rehydrate myself and probably would not have made it to the water fountain. Mr. Triebel took the drink away from me and told me not to worry about it.*

Answer:    NBTY denies the allegations in Paragraph #13 (see Answer to Paragraph #12 above for details). Additionally, Supervisor Triebel did not say "not to worry about it." Supervisor Triebel told Charging Party that "you can't take or open product." Triebel proceeded to tell his superior what had just taken place.

Ms. Joan Marchese
Page 5 of 6

Position Statement (Nature's Bounty)
August 25, 2006

*Paragraph # 14:  On January 6, 2006, I was terminated for "stealing product" from Nature's Bounty, Inc.*

Answer:    NBTY admits the allegations in Paragraph #14 (see Exhibits F and G).

## III.    ADDITIONAL INFORMATION

Throughout this period of time Charging Party never made the Respondent aware that he suffered from any disability. In fact, on the warning notice dated July 19, 2005, it stated that "Joseph said that he will try to be here every day going forward." Jones never mentioned his epilepsy to his supervisor, or to anyone in personnel. Charging Party received a third warning in August 2005 for sleeping on the job.

In February 2005, Charging Party missed several weeks of work. He told his supervisor that he was in the hospital, but he did not indicate what the problem was. The doctor's note from Brookhaven hospital dated February 20, 2005 states that "Mr. Jones is currently hospitalized and under our care, his date of discharge is not known at this time" - no diagnosis was given. (See Exhibit C.)  Further, on March 9, 2005, Charging Party returned to work with a note from a doctor, Devonara Kumar Singh, which stated "this patient of mine can return to work on 3/9/05. He was seen on 3/4/05 and 3/5/05. Prior to 3/4/05 he was in Hospital since February 16, 2005." (See Exhibit D.) Again, neither the doctor nor the Charging Party communicated any clinical diagnosis.

Although Charging Party was not eligible for Family Medical Leave, Respondent granted Charging Party unpaid leave for the time he was absent in February 2005. (Payroll Change Form, dated February 16, 2005, attached hereto as Exhibit H.) Respondent sent Charging Party a letter on February 24, 2005, explaining the company's policy. (See Exhibit E)  He was not terminated by this letter, only informed that the company did not have to guarantee his position. Charging Party returned to work on March 9, 2005.  (Payroll Change Form, March 9, 2005, and LOA Accrual Adjustments Statement, attached hereto as Exhibit I.)

Finally, we note that Jones signed a receipt for the NBTY Handbook (Handbook Receipt, dated March 17, 2005, attached hereto as Exhibit J.) and pages 55-56 of the Company Handbook rules (see Exhibit A) cover the extant situation.

## IV.    CONCLUSION

In conclusion, NBTY is very proud of its equal opportunity record and believes that the charge is without merit.  The company possesses an exemplary record of compliance with all fair employment practice rules and regulations. This case does not represent an exception to that rule.

Ms. Joan Marchese                                      Position Statement (Nature's Bounty)
Page 6 of 6                                                           August 25, 2006

      As always, any allegations in the charge which may not have been specifically
addressed in this letter response are deemed denied. If brought to our attention, such
omission will be corrected and responded to promptly.

      It is the policy of this office on behalf of NBTY, to reserve its right to alter,
amend or modify this response at any time now or in the future.

      If further information is required, please feel free to contact the undersigned
representative.

                                              Very truly yours,

                                              Alan B. Pearl

ABP/jsk
Enclosures

# Exhibit A

## 701- ASSOCIATE CONDUCT AND WORK RULES

To ensure orderly operations and provide the best possible work environment, NBTY expects Associates to follow rules of conduct that protect the interests of all Associates and the organization. Accordingly, it is important that you are aware of your responsibilities to NBTY and to co-workers.

All Associates are hired for an indefinite duration. All employment at the Company is at-will, which means that either you or the Company may terminate the employment relationship at any time with or without notice. All employment is continued on that basis, no matter what the Associate's status, position, compensation or length of service. This policy can only be changed in writing through an agreement signed by you and the Chairman of the Company.

Without changing the at-will status of your employment in any way, the following list gives some examples of prohibited conduct that may result in disciplinary action or immediate discharge as the Company, in its sole discretion, deems appropriate based on the facts of the situation. This list is not exhaustive and the Company may decide that other activities or conduct are grounds for disciplinary action or discharge.

1. Falsifying employment application, new hire information and/or other Company documents or records.

2. Unauthorized possession or personal use of Company or Associate property, including office supplies.

3. Carrying weapons or explosives on Company premises or in Company-owned vehicles.

4. Violating laws.

5. Fighting, throwing things, horseplay, practical jokes, undesirable or other abusive physical contact or other disorderly conduct which may endanger the well-being of any Associate on Company premises, or in a Company-related encounter off premises.

6. Engaging in acts of dishonesty, fraud, theft (including removal of Company-paid office supplies for personal use) or sabotage.

7. Threatening, intimidating, coercing, using abusive or vulgar language, or interfering with the job performance of other Associates.

8. Insubordination or refusal to comply with instructions.

9. Failure to perform reasonable duties that are assigned.

10. Unauthorized use of Company telephones, computers, voicemail, E-mail systems, materials, office supplies, time, equipment or property.

11. Damaging or destroying Company property due to careless or willful acts.

12. Conduct which the Company deems reflects adversely on the Associate, other Associates, departments or the Company.

13. Performance which, in the Company's judgement, does not meet the requirements of the position.

14. Engaging in such other practices as the Company determines may be inconsistent with the ordinary and reasonable rules of conduct necessary to the welfare of the Company, its Associates, vendors or clients.

15. Excessive absenteeism or tardiness patterns.

16. Failure to abide by safety guidelines and procedures.

17. Unauthorized disclosure of confidential or proprietary information or trade secrets.

18. Acceptance of gifts, gratuities or benefits from the Company's suppliers, vendors or other business contacts.

19. Failure to abide by the Company's policies, including but not limited to its policy against harassment.

20. Failure to comply with the Company's Drug and Alcohol Policy (see page 66 for details).

21. Failure to cooperate in a reasonable investigation.

22. Failure to comply with the Company's Insider Trading Policy, Disclosure of Non-Public Information Policy or other Policies (see page 75 for details).

23. Any action or behavior deemed by the Company, in its sole and exclusive discretion, to have an adverse impact on the Employer/Associate relationship.

24. Conduct that violates the Company's Workplace Harassment Policy (see page 11 for details).

## 702- CONFLICT OF INTEREST

You are expected to devote your best efforts to the interests of NBTY, Inc. and the conduct of its affairs. Associates have an obligation to conduct business within our ethical guidelines that prohibit actual or potential conflicts of interest. This policy establishes the framework within which NBTY wishes the business to operate.

### *Gifts and Gratuities:*

Associates of NBTY and all its subsidiaries, regardless of their capacity, shall not request, encourage or accept for their personal benefit (or for the benefit of their friends or relatives) gifts, gratuities, trips, cash, samples, meals, etc., from anyone selling to us or trying to sell to us, or in any way serving our Company. NBTY Associates must not solicit gifts or gratuities from vendors for personal use or for the use of friends or relatives, department parties or department events. Vendors may donate gifts for the purpose of raising funds for charities or non-profit organizations

# Exhibit B

Position Statement (NBTY, Inc.)
EEOC Charge No. 520-2006-02611
August 25, 2006

# Exhibit C

Position Statement (NBTY, Inc.)

Memorial Hospital Medical Center
101 Hospital Road, Patchogue, N.Y. 11772

**JONES, JOSEPH**
02/17/05        575090
27          M      CHR
SARIJ HASIB        ARV

**Interdisciplinary Progress Note**

| Date/Time | Service | Progress Note with Signature |
|-----------|---------|------------------------------|
| 2/20/05 | | To whom it may concern: please be informed that Mr. Jones is currently hospitalized and under our care. His date of discharge is not known at this time. |

196 3/00

**Interdisciplinary Progress Note**

# Exhibit D

Position Statement (NBTY, Inc.)
EEOC Charge No. 520-2006-02611
August 25, 2006

DEA# *AS 5477473*

**DEVENDRA KUMAR SINGH, M.D.**
41 Bay Avenue
East Moriches, NY 11940
631-878-1543  Fax: 631-878-2856

NAME _Joseph Jones_

ADDRESS _____  DATE _3/8/05_

**Rx** (Please Print)

This patient of mine
can return to work
on 3/9/05. He was
seen on 3/4/05 and
3/8/05. Prior to 3/4/05
he was in Hospital since
Feb. 16, 2005

_____ M.D.

**THIS PRESCRIPTION WILL BE FILLED GENERICALLY
UNLESS PRESCRIBER WRITES D A W IN THE BOX BELOW**

☐ LABEL

REFILL _____ TIMES

☐ PRN   ☐ NR

DISPENSE AS WRITTEN

03-Feb-05                    AWDM3              TR0050203_100095895-42_0085_519

# Exhibit E

Position Statement (NBTY, Inc.)
EEOC Charge No. 520-2006-02611
August 25, 2006

February 24, 2005

Joseph Jones
15 Washington Ave.
Mastic NY 11950

Dear Joseph:

We have been informed that you must be out until further notice.  Please be advised that as of February 16, 2005 you do not meet the requirements for a Family Medical Leave and, therefore, we cannot guarantee your position when you are able to return to work. To apply for short term disability benefits, please call Aetna Disability Services at (866)-282-8495.

If you presently have medical, dental, short term disability and/or long term disability coverage through NBTY Inc., you are responsible to make your associate contributions while on a leave of absence. According to our records, your current weekly deductions are: medical: $23.66, dental: $2.69, short term disability: $2.68, long term disability:$.62, and life insurance:$.60, totaling $30.25 Please submit a check in the amount of $30.25 for each week that you are out. Make the check payable to NBTY, Inc. and mail to Nicole Waldemar at 2100 Smithtown Ave. Ronkonkoma NY 11779. Should you choose not to make your weekly contribution, your benefits may be terminated.

If you have any questions, please feel free to contact me.

Very truly yours,

Pamela H. Antos
Director of Human Resources

/nmw
enclosure

# Exhibit G

Claimant: Joseph Jones

Social Security #:

Claim State: NY

First Day Worked: 2/23/04

Last Day Worked: 1/6/06

( ) Lack of Work: ( ) Permanent ( ) Temporary-Provide expected return date, if known

( ) Quit: Provide reason, how notice given, length of notice given, and any other detail

(X) Discharged: Provide reason, policy violation (include policy section), dates and details of prior warnings, and written documentation of the final incident details. Include the name & title of the individual who terminated the claimant.

Stealing - was caught by Supervisor opening a

( ) Still working: Provide current status (Full-time, Part-time, or on-call). If hours reduced or claimant not available for work, why?

Bottle of
Isopure Alpine
Punch drink.

( ) Other: Provide reason & details in details section

When asked

Pay provided:

he said he
was "thirsty"

|  | Amt. Rec'd | Date Paid | For P/E | Days | Hours |
|---|---|---|---|---|---|
| Vacation | _____ | _____ | _____ | ____ | ____ |
| Wages in Lieu of Notice |  |  |  |  |  |
| Holiday | _____ | _____ | _____ | ____ | ____ |
| Sick | _____ | _____ | _____ | ____ | ____ |
| Pension/Retirement |  |  |  |  |  |
| Back Pay | _____ | _____ | _____ | ____ | ____ |
| Bonus Pay | _____ | _____ | _____ | ____ | ____ |

Maribel Lomauro
Payroll Admin Assistant
Date: _____

# Exhibit H

Position Statement (NBTY, Inc.)
EEOC Charge No. 520-2006-02611
August 25, 2006

# Exhibit I

Position Statement (NBTY, Inc.)
EEOC Charge No. 520-2006-02611
August 25, 2006

## RETURN FROM LOA ACCRUAL ADJUSTMENTS

FILE # _25828_          ASSOCIATE NAME _Joseph Jones_

PROCESS LEVEL _NBTY_          DEPARTMENT _308_

LOA START DATE _2/16/05_

LOA RETURN DATE _3/9/05_

REASON FOR LOA _medical_

NUMBER OF WEEKS OUT _2_

NUMBER OF WEEKS PAID _0_

NUMBER OF WEEKS TO ADJUST _2_

1.   PERSONAL: _____

WEEKLY ACCRUAL x # OF WEEKS TO ADJUST _____

2.   SICK:

WEEKLY ACCRUAL x # OF WEEKS TO ADJUST _−1,8462_

3.   VACATION:

WEEKLY ACCRUAL x # OF WEEKS TO ADJUST _−3.077_

W/E ADJUSTED _3/13/05_

INITIALS _____

# Exhibit J

# NBTY, INC.

## ASSOCIATE HANDBOOK RECEIPT AND ACKNOWLEDGEMENT OF THE NBTY CODE OF BUSINESS CONDUCT AND ETHICS POLICY

I have received a copy of the NBTY, Inc. Associate Handbook. I understand it is my responsibility to read, understand and comply with the policies and procedures as outlined. I also understand I should consult the Human Resources Department regarding any questions not answered in the Handbook. I recognize and agree that this Handbook is not a contract and does not constitute an implied or express promise of employment.

I acknowledge that it is my responsibility to read and comply with the Company's Code of Business Conduct and Ethics. This code is available at www.nbty.com under the "Corporate Governance" section, or upon request from Human Resources. I understand that disregarding or failing to comply with this code will lead to disciplinary action, up to and including termination of employment.

I have entered into my employment relationship with NBTY or a subsidiary of NBTY (which are referred to collectively as "NBTY Companies") that employs me voluntarily and acknowledge that there is no specified length of employment. I understand that my employment is "at-will" and can be terminated by myself or the relevant NBTY Company at any time, with or without notice.

I understand that the Associate Handbook's policies, procedures, benefits and practices described are subject to change at any time without prior notice at the sole and unlimited discretion of the relevant NBTY Company, with the exception of the "at-will" employment policy.

I may receive an advance on certain benefits during my employment with the NBTY Companies. In the event my employment terminates, I authorize the relevant NBTY Company to withhold from my paycheck, as allowed under applicable law, the cost of all Company benefits provided but not yet earned, at time of termination.

_JOSEPH JONES_
**Associate Name**

_Joseph Jones_
**Associate Signature**

_3-17-05_
**Date**

# NBTY
## PAYROLL CHANGE FORM

258'28

___ Pay off & Remove from Payroll ___ LOA ___ Change Rate

___ Transfer ___ Title Change ___ Status Change ___ Promotion

Effective Date:

Soc. Sec. No.                              Hire Date:

___ Discharge ___ Resignation ___ Layoff ___ Retirement

___ Injury ___ Personal ___ Workers Compensation

___ Military ___ Medical ___ Maternity

APPROVED:

Dept. Manager

| TO THE CLAIMANT: THE OFFICE IDENTIFIED AT THE RIGHT ISSUED THIS NOTICE. | Aetna Life Insurance<br>PO Box 14552<br>Lexington, KY. 40512 |
|---|---|

## NOTICE OF TOTAL OR PARTIAL REJECTION OF CLAIM FOR DISABILITY BENEFITS
### AVISO DE TOTAL O PARCIAL RECHAZO DE RECLAMACION DE BENEFICIOS POR INCAPACIDAD

THIS FORM MUST BE USED BY SELF-INSURED EMPLOYERS, UNIONS OR ASSOCIATIONS AND INSURANCE CARRIERS TO REJECT ALL OR PART OF A CLAIM FOR DISABILITY BENEFITS. This notice is to be mailed to the claimant in triplicate within 45 days, to give the claimant opportunity of filing the notice with the Chair, Workers' Compensation Board for the purpose of review. IMPORTANT: check each item on which claim is being rejected. If reason No. 5,7,9,or 10 is checked, enter explanation in space provided in No.11.

| Claimant<br><br>Joseph Jones<br>15 Washington Ave.<br>Mastic, NY. 11950 | Date of this Notice<br>03/23/05 | | Social Security No. |
|---|---|---|---|
| | First Day of Disability<br>02/17/05 | Carrier Claim/File No. | Date Claim Received (by employer or carrier, whichever is earlier)<br>03/03/05 |
| | Claim Filed (Check one) [x] DB-450  [ ] C-7 (Sec.206.2)<br>[ ] DB-300    WCB Case No. | | |
| Employer<br>NBTY | Address | | |
| Policy Holder or Union (If Different from Employer) | Address | | |
| Benefits paid on this claim prior to the date of this notice    [ ] None  [X] From 02/24/05   To 03/08/05 | | Amount Per Week $ 165.00 | |

You are hereby notified that your claim for disability benefits is rejected for the reason(s) checked below:

1. [x] Payment of benefits is rejected after 03/08/05 the date you could return to work according to medical evidence on file. If you were still disabled after that date, submit additional medical evidence immediately.

2. [ ] Your claim was filed more than 26 weeks after your disability began.

3. [ ] Notice and proof of disability was not furnished within 30 days (See Dates Above.) after disability began. (See item 4 on reverse.)
   (A) [ ] No benefits payable.
   (B) [ ] Payments are being made beginning 2 weeks prior to the date your claim was received. Benefits are payable from _____

4. [ ] We are not your last employer's Disability Benefits Insurance carrier.
   (A) [ ] Your claim has been forwarded to: _____
   (B) [ ] Your claim is returned herewith. We suggest you give it to your employer for submission to the proper carrier or forward it to the Workers' Compensation Board, Disability Benefits Bureau, 100 Broadway-Menands, Albany, NY 12241-0005.

5. [ ] Your record of employment is not sufficient to establish your eligibility for disability benefits. PLEASE SEE ITEM NO. 11.

6. [ ] Your disability began more than 4 weeks after your employment terminated. Your claim, together with copies of this notice and our related records, is being forwarded to the Workers' Compensation Board, Special Fund for Disability Benefits, for consideration.

7. [ ] You have received either 26 weeks of benefits, the maximum payable during a period of 52 consecutive weeks or for any one disability; or you have received the maximum payable under a Disability Benefits plan filed with the Workers' Compensation Board. PLEASE SEE ITEM NO. 11.

8. [ ] Your disability arose out of and in the course of your employment. We suggest you notify your employer and obtain a claim for Workers' Compensation (Form C-3) from the nearest Workers' Compensation Board Office.

9. [ ] You failed to furnish, as requested, information necessary to process your claim. PLEASE SEE ITEM NO.11.

10. [ ] Other - PLEASE SEE ITEM NO.11

| 11. Explanation<br><br>This notice is to inform you that your Short Term Disability benefits have currently been certified through the date listed in explanation 1. |
|---|

| _signature_ | Cecilia Bonifacio/STD Analyst | 1(866)282-8495 |
|---|---|---|
| Signature | Title | Telephone No. and Extension |

**Page 2**

| Patient Name *(Last, First Middle Initial)*  **Required** |
|---|
| Jones, Joseph |

## 4. History

(a) Symptoms: *Seizures, fever*

(b) Date symptoms first appeared or accident happened ............. MM *02* DD *17* YYYY *2005*

(c) Has patient ever had same or similar condition? ☐ No   ☐ Yes, state when and describe.
*Pt has a past history of seizure disorders, Not meningitis*

(e) Is condition due to injury or sickness arising out of patient's employment? ☒ No   ☐ Yes   ☐ Unknown

(f) Other Treating Physicians

Name _____ Specialty _____ City _____ State _____

Name _____ Specialty _____ City _____ State _____

## 5. Abilities/Limitations

(a) **Patient is:  Place remarks in Item (d) below, if applicable.**

- Competent to endorse checks and direct the use of proceeds thereof    ☒ Yes  ☐ No   ☐ Other/describe in (d)
- Able to work with others ................................................    ☒ Yes  ☐ No   ☐ Other/describe in (d)
- Able to give supervision ................................................    ☒ Yes  ☐ No   ☐ Other/describe in (d)
- Able to work cooperatively with others in group setting................    ☒ Yes  ☐ No   ☐ Other/describe in (d)
- Able to do?  **Select one:  Place remarks in Item (d) below, if applicable.**
  - ☒ **Heavy work activity.** No limitations of functional capacity.
  - ☐ **Medium work activity.** Exerting 20-50 pounds of force occasionally, and/or 10-25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly
  - ☐ **Light work activity.** Exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently
  - ☐ **Sedentary work activity** – moderate limitation of functional capacity.  Exerting up to 10 pounds of force occasionally.  Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time
  - ☐ **No ability to work.** Severe limitation of functional capacity; incapable of minimal activity
  - ☐ **Other.**  Place remarks in Item (d) below.

What medical restrictions/limitations are you placing on patient? *(Activities of Daily Living, Driving, Lifting, Pulling, Pushing, and Amounts, etc.)* _____

- <u>Number of Hours</u> patient is capable of working in a day: ☐ 12  ☐ 10  ☒ 8  ☐ 6  ☐ 4  ☐ 2  ☐ 1  Hour/Day
- <u>Number of Days</u> per week patient is able to work:  ☐ 1  ☐ 2  ☐ 3  ☐ 4  ☒ 5  ☐ 6  ☐ 7  Days/Week
- Date you prescribed restriction on work activities ......... Month _____ Day _____ Year _____
- How long are these restrictions/limitations in effect? _____ _____ _____  ☐ No Longer
            Days  Weeks  Months
- Estimated return to work date? _____ modified duty _____ full duty
            *(MM/DD/YYYY)*  *(MM/DD/YYYY)*

(c) **Objective findings that substantiate impairment** *(current laboratory, physical and/or mental status examination, and other testing)* _____

(d) Other/Comments _____

## 6. Current Status

(a) Patient has ................................. ☒ Improved   ☐ Stabilized   ☐ Regressed   ☐ Not Applicable

(b) Is there a medical contraindication for patient to participate in Vocational Rehabilitation (job training) programs?
☒ No  ☐ Yes, please explain _____

(c) In your opinion, is your patient motivated to return to work? _____

/17/05  04:20 PM  ALINA  via VSI-FAX                                      Pa.    of   #1311818

| Patient Name *(Last, First Middle Initial)* **Required** |
|---|
| Jones, Joseph |

## 7. Regulation Notice

Any person who knowingly and with intent to injure, defraud or deceive any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Attention California Residents:** For your protection, California law requires notice of the following to appear on this form.  Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Attention Colorado Residents:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company.  Penalties may include imprisonment, fines, denial of insurance, and civil damages.  Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**Attention Florida and Virginia Residents:** Any person who knowingly and with intent to defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**Attention Kentucky, Ohio and Pennsylvania Residents:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and may subject such person to criminal and civil penalties.

**Attention Louisiana and West Virginia Residents:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Attention Maine and Tennessee Residents:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties may include imprisonment, fines or denial of insurance benefits.

**Attention New Jersey Residents:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**Attention New York Residents:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each violation.

## 8. Physician Certification

| Attending Physician's Name *(Print)* | Degree MD | Specialty Internal Medicine |
|---|---|---|
| Address *(No. Street, City, State, Zip Code)* | Telephone Number 631-878-1543 | Fax Number 631-874-2559 |

## 9. Physician Signature

| Signature | Date *(MM/DD/YYYY)* 03|18|05 |
|---|---|

DEVENDRA K. SINGH, MD
41 BAY AVE.
EAST MORICHES, NY 11940

# ⱺAetna·    **Attending Physician Statement**

### Complete and sign the form using BLUE or BLACK Ink.

**1. Patient Instructions** –   The Physician will complete Sections 2 through 9.
The Patient will complete Section 1.
The Patient should also fill in their name at the top of Pages 2 and 3

The *Patient* is responsible for completing this section, and for ensuring that their **Attending Physician completes the remainder of this statement**. The Patient is responsible for paying any fees that may be charged for completion of this form by their physician. **If you have any questions, please call (866) 282-8495.**

(a) Control Number **877069**

(b) **Jones, Joseph**
Patient Name *(Last, First, Middle Initial)*    Social Security Number    Birth Date *(MM/DD/YYYY)*   Height    Weight(lb)

(c) Patient Gender  ☒ Male  ☐ Female
(d) **15 WAshington Ave Mastic NY 11950**
Patient Home Address – Required *(Current No., St., Town, State, Zip – no PO boxes)*   ☐ Check if New

(e) Mailing Address, if different from Home address

(f) Patient Employer Name/City/State

(g) Patient Telephone Number **(031-281-1291**                    ☐ **Check if New**

(h) Job Title/Occupation

(i) Type of Claim:  ☒ Short Term Disability  ☐ Long Term Disability  ☐ Waiver of Premium
☐ Long Term / Permanent Total Disability

**2. Physician Instructions**

The *Attending Physician* should complete the items below, based upon a recent examination. Attach additional documentation as needed. If you have any questions, please call (866) 282-8495.

**Please complete form in its entirety and fax to (877) 693-7258. Pages 2 and 3 MUST be completed before faxing.**

**3. Impairing Diagnosis & Treatment**

(a) Primary Diagnosis **MeNINGiTiS**             Primary ICD Code **322·9**
Secondary Diagnosis **Seizure**              Secondary ICD Code **345·90**
Other Diagnoses _____             Other ICD Codes _____

(b) Height **5'5"**    Weight **130 lbs**   Date Measured *(MM/DD/YYYY)* **06/09/04**

(c) If Pregnancy related, delivery or expected date **N/A**    MM ____ DD ____ YYYY ____   Delivery ____
Type:  ☐ Vaginal  ☐ Cesarean

(d) Primary Procedure _____             Primary CPT Code _____
Secondary Procedure _____             Secondary CPT Code _____
Other Procedures _____             Other CPT Codes _____

(e) Medication(s)/Dose/Frequency **DiLANTIN 100mg   PO BiD, Diflucan 400mg PO BiD**
Impairment from medication effects _____

(f) Is patient still under your care for this condition?  ☐ Yes  ☒ No, date service terminated **02/08/2005**
*(MM/DD/YYYY)*

(g) Treatment summary _____

(h) Office visit dates:  First **06/09/04**  Last **03/08/05**  Next _____  Frequency of appointments **PRN**
*(MM/DD/YYYY)*     *(MM/DD/YYYY)*    *(MM/DD/YYYY)*

(i) Was patient recently hospitalized?  ☒ No  ☐ Yes   Date hospitalized: Admit **2/17/05**  Discharge **2/28/05**
*(MM/DD/YYYY)*    *(MM/DD/YYYY)*

(j) Hospital Name/City/State **Brookhaven Memorial Hospital**

I. Background

I Joseph Jones was hired on or about February 23,2004. I was hired as a stock person for the third shift position.(11:00pm 7:30am) I worked in department 308 in the warehouse located at 4320 Veterans Memorial Highway, Holbrook, New York 11741. I Joseph Jones was interviewed by Nicole Waldmar. On or about February 23, 2004 and then I had been interviewed by Nicole Waldmar at that time. Then following that interview I had a second interview with Charlie Triebel. This took place at 4320 Veterans Memorial Highway, Holbrook, Newyork,11741. The interview was for third shift.(11:00pm 7:30am) Charlie Triebel then hired me for a stock position at building 4320 Veterans Memorial Highway, Holbrook,Newyork,11741. My first night at building 4320 Veterans Memorial Highway,Holbrook,Newyork,11741. I notified Charlie Triebel about my epilepsy. I made sure that I made Charlie Triebel aware of my disability. I tell all my employers before and after hired about my disability. I tell them to warn the employer so if I have a seizure they don't get scared also so they could tell 911 and the paramedics so if I can not respond to any questions asked the staff could including my supervisor could do so for me. Also so I get the proper medical treatment quicker because the company staff all know about my disability. If the statement made to NBTY INC. were not legitimate concerning my disability then why was I not allowed to operate the transporter. This machine functions on a battery operated power. The reason why I wasn't allowed because they knew if I had a seizure that I could hurt myself or others around me. When Charlie Triebal transferred me to 2005 Orville Dr Holbrook,Newyork,11741. It was on or about March 21,2004. MY new supervisor was Abdul Ali. At that present time I still worked third shift. I warned my supervisor Abdul Ali that I have epilepsy when I was transferred to building 2005. After building 2005 closed down department 301 on or about December 12,2005. I was transferred back to third shift for department 308 at building 4320. Charlie Triebel was my supervisor once again. I told Charlie Triebel once again about my epilepsy, and my doctor said to me that I needed to stay hydrated at all times.. I Joseph Jones was terminated on or about January 6,2006. I Joseph Jones went to notify Charlie Triebel about the situation. The situation was about the "Pure Alpine Punch Drink" I took the drink off the shelf. Charlie Triebel and I walked towards each other. Charlie Triebel seen the drink in my hand and asked if I opened it I replied yes. Then Charlie Triebel took the drink from me. Then Charlie Triebel escorted me further down the aisle. The approximate length we walked together was about (10 to 15feet) away from the end of another aisle. Then at that time Charlie Triebel and I discussed the situation further . Charlie Triebel stated to me I should not have taken the drink from the shelf. Charlie Triebel also stated there is no exception. But I stated to Charlie Triebel I would not have taken the drink from the shelf but I had a (aura) sensation that warns me that I am about to have a seizure. I stated to Charlie Triebel I don't want to lose my job over this situation. Charlie Triebel then told me not too worry about the incident. Charlie Triebel stated to me just don't take anything off the company shelves again. I told Charlie Triebel I won't ever do it again. I also stated to him once again I need a drink in the areas I worked in at the job so I would not have another episode like this. So this does not happen again because I have my own drink to drink if this would occur again..Once again the first day transferred to 4320 I stated to Charlie Triebel to him before this incident I need a drink at my work area because the side effects to the medication I take for my epilepsy. I would have had my own drink if Charlie Triebel allowed me to carry a drink this would have all been avoided, I would not had to picked up the companys drink. I would of had my own to drink. I never told Charlie Triebel I took the drink because I was thirsty. I stated to him because of a seizure I felt coming on that's why I took the drink. I took the drink so I could rehydrate myself as quickly as possible to try to prevent the seizure. After talking to Charlie Triebel about the situation I then went to my locker to get my own drink which contained Gatorade. I then left in the morning when my shifted ended which was at 7:30am.

My answer to NBTY INC. answers

Paragraph 1# I notified Charlie Triebel the first night of my shift after I was hired.(11:00pm 7:30am) But on or about the time of the interview I told him too about my epilepsy. Charlie Triebel was the supervisor for building 4320 Veterans Memorial Highway, Holbrook ,Newyork,11741. When I was transferred to building 2005 Orville Dr, Holbrook,Newyork,11716. I also notified my new supervisor who was Abdul Ali. If NBTY INC was unaware of this information then why when I had a allergic reaction to

also told them about my epilepsy then. She had hung up with then after they told her. When this incident occurred the date was November 6,2004. The entire staff was there when the paramedics arrived at 2005 Orville Dr, Holbrook, Newyork,11716. The staff told the paramedics what was happening at that present time. Also told them about my seizures and the medication I take for my seizures. I also told the paramedics myself again at that time. Also the security guard had to fill out an incident report that night. So what happened to the records that were summated by the security guard. I also verbally told them myself what happened that night. Also following me being terminated I had a phone conversation with human resources . I spoke to Pamela Antos on or about January 6, 2006 about the situation. I and my fiancée were both on the phone when the conversion took place. My wife now was on the phone when I told Pamela Antos while I was telling her that I told Charlie Triebel 4320 Veterans Memorial Highway,Holbrook,Newyork,11716. I told her that I told him because I had an aura that was warning me that I am about to have a epileptic seizure. Pamela stated to me the story she was told was different then mine. But I explained the situation to her while my wife was on the phone with us both. Pamela Antos stated to me there is nothing she could do about the situation. She also stated to me if there was documentation it would have been fine I would not have been terminated then. My fiancée gave Abdul Ali documentation on or about February 16,2004 about the hospitalization. But what happen to the documentation my fiancée gave Abdul Ali. On or about February 20,2005 about the hospitalization. NBTY stated they had no records about my epilepsy, or any other medical problems I suffered from in February 16,2005. So what happened to the consultation request I gave them stating the diagnosis. My fiancée also gave Deanna second shift supervisor documentation at building 2005.


**Paragraph#2** All of the statement is true if department 308 is 4320 Veterans Memorial Highway, Holbrook, Newyork,11716. And if department 301 is 2005 Orville Dr, Holbrook, Newyork,11716.


**Paragraph#3** Charlie Triebel the supervisor that hired me at the second interview which was at building 4320 Veterans Memorial Highway, Holbrook, New York, 11716. On the first night shift I worked was (11:00pm 7:30am) when I notified Charlie Triebel about my epilepsy. Also I notified Abdul Ali which was the supervisor for building 2005 Orville Dr, Holbrook, New York, 11716. The first shift I worked with him was (11:00pm 7:30am).


**Paragraph#4** On February 16,2005 I suffered from a seizure. I had a seizure at approximately 6:20pm which occurred at my home. I also was diagnosed with meningitis at this time when I was hospitalized. I Joseph Jones has a past history of epilepsy not meningitis. I Joseph Jones was in Brookhaven Hospital on February 16,2005. My fiancée at that time could not get information about my condition because of the Hippa Law. But my fiancée continued to call Abdul Ali at building 2005. She called to notify him that I would not be in on February 16,2005. My fiancée called after the paramedics took me to the hospital to tell him I would not be in that night which was February 16,2005. I Joseph Jones was in ICU when I was there. When I woke up I had the doctor write a note for NBTY. My fiancée gave this documentation to the supervisor at 2005, which was Abdul Ali. When I woke up they transferred me a few days later to the step down unit because I was doing better. I did not need all the machines I had in ICU. My fiancée brought the documentation to Abdul Ali on or about February 20,2005. My fiancée brought the documentation to building 2005. My fiancée asked the security guard to get Abdul Ali who was my supervisor at 2005. When Abdul Ali came to the waiting area before the door to the warehouse. My fiancée verbally told Abdul Ali and other employees what was going on with me. She stated to them I had a seizure and meningitis at this time. Also that my discharge was unknown because they were waiting for more test results to come back. She stated to them all of the machines I was on in the ICU. She also told them that she would keep them informed. During the two weeks I was in the hospital my fiancée also spoke about my situation to the second shift supervisor. Who was at that time Deanna but her last name I don't remember at building 2005. My fiancée gave Deanna documents to give to Abdool Ali when he arrived at work that night The note was on the Brookhaven Hospital Letter Head. My fiancée gave NBTY INC a few documents. Yes we did give them that documents but we also gave them other documentation too. I did provide a return to work

Paragraph#5 On or about March 9,2005 I returned to work, and provided my employer with a note from my doctor documenting my illness. This was Discharge papers along with a paper stating I had a seizure and meningitis. In that letter it stated my position was not guaranteed. Even if I didn't qualify for the family leave act My fiancée kept NBTY informed about what was going on with me so why did they terminated me. My fiancée gave them documentation during my hospitalization. But when I got to work that night I spoke to Abdool Ali he stated to me what are you doing here you've been fired.(terminated ). Abdool Ali stated he would fix the problem.

Paragraph#6 On the payroll change form it has medical check off, what was there remark to that. Also if I was not rehired why did I not get my raise I was to get on my first year anniversary if I was hired on February 23,2004. I did not get my raise until March 2005. My anniversary date was adjusted because they rehired me. In the handbook table of contents 305 read for Rehire. I left the company in good standing before this occurred.

Paragraph#7 I Joseph Jones would bring my prescription (dilantin) with me to work. (11:00pm &7:30am) I would take my medication on my break or at my lunch. I took the prescription at both buildings. Before I received a locker I would sit my medication at the supervisor desk at 4320 Veterans Memorial Highway, Holbrook, New York, 11716. This supervisor was Charlie Triebel (11:00pm &7:30am). The medication bottle stated my name and address and the pharmacy company name on it. When I was first hired and had no locker.

Paragraph#8 I told both supervisors at both building who were Charlie Triebel at building 4320 and Abdul Ali at building 2005. I also told both parties about the reasonable accommodation . I also stated to both of them about the side effects from my medication I take for my epilepsy. I also stated to both parties that I needed to be hydrated at all times especially when exerting myself. Abdul Ali allowed me to carry my drink in the warehouse which contained Gatorade. He allowed me because of my condition. I Joseph Jones would carry a bottle of Gatorade which was 20-32 oz's once I finished that I would fill it with water. The bottle was plastic with a screw on cap with the label on it which stated what fluid was in the bottle. As well you could see what was in the bottle. But what they stated in paragraph#11 they stated I could carry a sport's bottle in the handbook it states different. Go to the table of contents chapter 309 page 23. The food and beverage policy. The book states food and beverage consumption is only allowed in designated areas such as the lunch /break area. Also states private offices, conference rooms, and private workstations. Food and beverages are not allowed in the production area at anytime.

Paragraph#9 As a stock person my duties included heavy lifting and exertion. The boxes that were packed and sealed weighted approximately (20 to 30 lbs) each. As I went through my shift I had to move pallets that weighted 70 lbs or more approximately. I moved the pallets with a hand jack I had to push and pull these pallets. So how is this not heavy lifting and exertion through my shift. I didn't only do postal trays, and pick up boxes containing 12 bottles of Isopure Alpine Punch. I also cleaned up the warehouse. (what aisles I worked in for that night) I also restocked the postal trays. I also was told to lift the postal trays by myself, I also had to climb the shelves to restock them and rearranged them. I had a specific amount of work to do for my shift as well as how much work I get done in an hour.

Paragraph#10 At building 4320 Veterans Memorial Highway, Holbrook, Newyork,11716. Which building I was transferred back to. I told Charlie Triebel I needed to carry a drink with me at all times. Charlie Triebel stated to me you can't carry a drink. Charlie Triebel said you can go to the water fountain when you need to.

2005. So I did asked for a reasonable accommodation if Abdul Ali let my carry a drink but Charlie Triebel would not grant me my request.

Paragraph#11 In the NBTY INC handbook  table of contents 309 page 23 Food and Beverage Consumption. It states food and beverage consumption is only allowed in permitted in designated areas such as lunch/ break area, private offices, conference rooms and  private work stations. Food and  beverage are not allowed in the production area at any time. I was also unaware of the second water  fountain located in the warehouse. I was only aware of the one entering the building.

Paragraph#12 I told Charlie Triebel on several occasions about my epilepsy . I did take the Isopure Alpine Punch  from the shelf. But I never stated to Charlie Triebel because I was thirsty. I told him because of the seizure I felt coming on and I needed to rehyrated myself as quickly as possibly to try to prevent  it. I told Charlie Triebel  I needed to be hydrated at all times. I also told him that a suffered  from epileptic seizure on several occasions. Also again when I was transferred back to him at building 4320. I did offer to pay for the drink to Charlie Triebel. Charlie told me there was nobody that I could give the money too for the drink. He also refused too take the money I went to give him which was a ten dollar bill. I apologize for taking  the company drink off the shelf and for drinking it I said this too Charlie Triebel.

Paragraph#13 Charlie didn't see what happened he just seen the drink in my hand. Charlie did state to me I just can't take  product off the shelf for my own use. I did state  to him I probably would not have made it to the water fountain near the front entrance. I was unaware of the other water fountain. I did not know 4320 building had two water fountains. Also Charlie did state not to worry about it. I told Charlie I did not want to lose my job over this incident.

Paragraph#14 I did not steal the product just to take it. I took the because  of my disability I suffer from.

 Additionally Information In fact the warning noted dated July 19,2005 I did state I will be here everyday forward unless my disability (epilepsy) stops me from attending  work. I stated this to Abdool Ali. Receiving a warning for sleeping on the job in August 2005  is irrelevant to these charges. Also NBTY INC had a point system you could get  6 points in a year until you are terminated. It went from January 1st to December 31st  of every year so they totally discard that when this incident happen with the drink.. They just wanted to terminate me from Febuary16th 2005. On January 4th 2006 I went to work the security guard said to me you have to wait here for Charlie you can't punch in so I had to wait at the security desk. Charlie then came to tell me I have been suspended then following him stating that to me I asked him how long I was suspended  for he said he did not know. I had asked him for what the drink that I had taken because of my condition. I also offer to pay for the drink when this situation took place. After being told this I called NBTY the following night to speak to Charlie about the situation. Charlie stated to me that I could not come in and that I was fired over the drink. I responded  what did you say to them. He said it doesn't even matter and that he does not have to explain anything to me. Then he asked when I was going to hand in the badge and clean out my locker. I stated this is BULL SHIT I am going to contact  a lawyer. He stated to me then you go ahead. Then the phone conversation ended.  And nobody from human resource wanted to listen to anything  I said they went  on they went on Charlie's version. Charlie was known to cause problems for employees and when brought to the human resource  they did nothing about the problems he caused. Also Charlie lied at the department of labor hearing we had. He did not tell the truth about anything . I feel maybe you  should  get the tape from the hearing. I also know since being terminated I now take PHENYTOIN for my epilepsy , MIRTAZAPINE for depression, MECLIZINE for the side effect from the PHENYTOIN. NAPROXEN for an injury that occurred recently, IBUPROFEN for pain, SEROQUEL for me to sleep because since NBTY I could not sleep.

Conclusion I Joseph Jones  felt NBTY INC wanted to terminate me after the first incident. The first incident was February 16th 2005 to March 9th 2005. NBTY should be held liable for this charge because they made me suffer mentally and physically. Also because they were aware of my disability. They caused me to have a nervous break down. I am suicidal since this occurred. They caused me and my wife a lot of marital problems because I could not take care of her or my family. They caused  my wife to have no prenatal care because she had no insurance cause they terminated me. My daughter born in August 2006  was held from me and my family because of  NBTY. Cause she and my wife had no care. My daughter suffered to because she did not go home when her mother did. I had to wait for medicated which did not come in effect until July1st 2006. Also my two kids could not get there medication or see a doctor because of NBTY. I could not get my medication either because of them because we could afford any of it for anybody.  I was the sole provider we had nothing for months because of them we were almost homeless because of them. That is because the department of social services did not want to help us, we were almost homeless. I have trouble getting a good paying job because I have to state why NBTY terminated me. I still go to counseling because of them. Even thought it wasn't my fault I got terminated it was because of the disability I suffer from. NBTY INC owes me and the entire family and apology. Charlie Triebel as well because he lied about the whole situation.

Thursday
2-12-04
2:30
Nicole
244-2120
X 3321

Left Message

Charlie
#967
Stock
3rd Shift

**NBTY** INC.

**APPLICATION FOR EMPLOYMENT
(AN EQUAL OPPORTUNITY EMPLOYER)**

2/12/04 - 11:pm

Date 1-23-04

**Personal Information:**

Name Jones            Joseph
(last)          (first)          (middle)

Social Security Number

Present Address 15 Washington Ave        Mastic        New York
(street)        (city)        (state)

Phone 631-395-0641 / 631-816-4692

---

Referral source: ☒ Advertisement  ☐ Friend  ☐ Relative  ☐ Walk-In  ☐ Employment Agency  ☐ Other

Position applied for Material handler    Date you can start 1-29-04    Salary desired $8.50

Are you employed now? Yes    If so may we inquire of your present employer? Yes =3rd-

Have you ever applied to this company before? Yes    Where? here    When? 5-15-03

Have you ever been employed by this company before? No    If yes, give date(s) _____

Are any of your relatives (other than spouse) employed by this company? No    If so, whom? _____

If you are not a U.S. Citizen, can you provide documents showing you are legally authorized to work in the U.S.?    ☒ Yes    ☐ No

Whether you are a Citizen of the U.S. or not, you will be required to provide documents that establish your identity and employment status.

---

Are you eighteen years of age or older? (Check one)    ☒ Yes    ☐ No

Have you ever been convicted of a felony?    ☐ Yes    ☒ No

If yes, please explain _____

---

| Education | Name & Location of School | No. of Years Attended | Did you Graduate? | Subjects Studied |
|---|---|---|---|---|
| Grammar School | | | | |
| High School | Belfort 2nd Beaver Dam Rd. | 4 | Yes | Basic Studies |
| College | 299 Chambers St, Manhattan COMM. | 1 | No | computer science |
| Trade, Business or Correspondence School | | | | |

**General:**

Subjects of special study or research work

| FROM | TO | FIRM NAME-ADDRESS (START WITH LAST CONNECTION) | POSITION-DUTIES | REASON FOR LEAVING | SALARY OR HOURLY RATE |
|---|---|---|---|---|---|
| 3/18/03 | 1/23/04 | Name _Alfaire Pharm._ Address _311 W. lone, Aquabogue_ | Lead Man | Stp assault | $7.55 hr |
| Supervisor _Russie Phillips_ | | | | | |
| Tel. No. _631-722-5968_ | | | | | |
| 2/10/02 | 4/3/02 | Name _Wendy's_ Address _1520 WM Floyd Pkwy_ | crew Member cook-clean | Moved | $7.00 hr |
| Supervisor _Ben_ | | | | | |
| Tel. No. _631-395-24_ | | | | | |
| / / | / / | Name _Wendy_ Address | | | |
| Supervisor | | | | | |
| Tel. No. | | | | | |
| / / | / / | Name Address | | | |
| Supervisor | | | | | |
| Tel. No. | | | | | |

**References:**

Give the names of three persons, not related to you, whom you have known at least one year.

| Name | Address | Relationship | Years Acquainted |
|---|---|---|---|
| 1. _Elizabeth Schaefer_ | _15 Washington ave_ | _ex-Boss_ | _4_ |
| 2. _russie Phillips_ | _311 w. lane, Aquabogue_ | _Boss_ | _2_ |
| 3. _Eralk Bryant_ | _38 Rider ave_ | _friend_ | _6_ |

List any other qualifications not listed above which you feel would be beneficial for this position _I am willing to work long hours, even holidays. I would like to work somewhere that will allow me to grow as an employee and person._

"I certify that the facts contained in this application are true and complete to the best of my knowledge and understand that , if employed, falsified statements on this application shall be grounds for dismissal."

"I authorize investigation of all statements contained herein and the references listed above to give you any and all information concerning my previous employment and any pertinent information they may have, personal and otherwise, and release all parties from all liability for any damage that may result from furnishing same to you."

"I understand and agree that, if hired, my employment is for no definite period and may, regardless of the date of payment of my wages and salary, be terminated at any time without any prior notice"

"I further agree that any benefits may be changed by the company at any time, without any prior notice."

Date _1-23-04_        Signature _Joseph Gone_

DO NOT WRITE BELOW THIS LINE

MM 004  B4 N  NO 5- 3260330   A6 6 N Q 8  B5 81 Q

**AGENCY NAME** ____ County Ambulance ____   **MILEAGE** | CALL REC'D 93:14
**DISPATCH INFORMATION** Section C-1 | ENROUTE 93:36
**CALL LOCATION** County 2005 Orville Dr | END ___ / AT SCENE 93:83
**LOCATION CODE** 5004 | BEGIN ___ / FROM SCENE 93:47
| TOTAL ___ / AT DESTINATION 93:59
| IN SERVICE
| IN QUARTERS

**F I R S T  N A M E** ___   **L A S T  N A M E** ___
**A D D R E S S** ___
**A P P T / U N I T  N U M B E R** ___   **( P H O N E )** - ___
**A N Y T O W N**   **NY**  11950 +4
**A G E** ___  **D.O.B.** ___

Care in progress on arrival: ○ None

Physician: Dr Singh

**CHIEF COMPLAINT:** late ... Vomiting 40, burning to throat, difficulty breathing x 20 min
to this. Should I'm allergic ...

**PRESENTING PROBLEM**
○ Airway Obstruction
● Respiratory Distress
○ Cardiac Related (Potential)
○ Cardiac Arrest
● Allergic Reaction

**PAST HISTORY**
○ None  Should Th
○ Allergy to Environment
● Hypertension  ○ Stroke
● Seizures  ○ Diabetes
○ COPD  ○ Cardiac
○ Other (List) ___

**TREATMENT GIVEN**   **FILL IN CIRCLE**   JONES, JOSEPH
● Moved to ambulance on stretcher/backboard    93369739   11/06/04   575090
○ Moved to ambulance on stair-chair    11/10/1977   26   M   CHR
○ Walked to ambulance    DOCTOR UNASSIGNED   ARV
○ Airway Cleared
○ Oral / Nasal Airway
○ Esophageal Obturator Airway / Esophageal Gastric Tube Airway (EOA/EGTA)
○ EndoTracheal Tube (E/T)
● Oxygen Administered @ [15]   L.P.M., Method   NRB
○ Suction Used
○ Artificial Ventilation Method
○ C.P.R. in progress on arrival by:  ○ Citizen  ○ PD/FD/Other First Responder  ○ Other
○ C.P.R. Started @ Time ___   Time from Arrest Until C.P.R. ___ Minutes
○ EKG Monitored (Attach Tracing) [Rhythms] ___
○ Defibrillation/Cardioversion No. Times ___   ○ Manual  ○ Semi-automatic

○ Medication Administered (Use Continuation Form)
○ IV Established Fluid ___ Cath. Gauge ___
○ Mast Inflated @ Time ___
○ Bleeding / Hemorrhage Controlled (Method Used) ___
○ Spinal Immobilization Neck and Back
○ Limb Immobilized by  ○ Fixation  ○ Traction
○ (Heat) or (Cold) Applied
○ Vomiting Induced @ Time ___ Method ___
○ Restraints Applied, Type ___
○ Baby Delivered @ Time ___ in County ___
  ○ Alive  ○ Stillborn  ○ Male  ○ Female
○ Transported in Trendelenburg position
○ Transported in left lateral recumbent position
● Transported with head elevated
○ Other: ___

**NARRATIVE:** Pt is a 27 yo ♀ c/o SOB, nausea ⊕ vomiting. Resting Supine.
Pt is ⊕ allergy to seafood. Lungs ® sl. wheeze, PERRL, ⊖ LOC, BSxHP/BLS ⊖
other signs of trauma. Skin is clear. Pt administered O₂ ē relief
reported to SOB. Transported ē further incident.

(See List)  BM II   ___   5 2 15   YES

# APPLICATION FOR PUBLIC ACCESS TO RECORDS
SUFFOLK COUNTY POLICE DEPARTMENT

PDCS-5414e

## SECTION 1. TO BE COMPLETED BY APPLICANT

TO: ☐ Central Records
Police Department
Yaphank, N.Y. 11980 Tel: 631-852-6015

☑ Freedom of Information Officer
Command: _____
Address: _____

I HEREBY APPLY FOR A CERTIFIED COPY OF THE REPORT/RECORD DESCRIBED BELOW (please supply as much of the listed information as possible, printing your entries with a ball point pen):

| APPLICANT'S NAME (FIRST, INIT, LAST) | APPLICANT'S SIGNATURE | DATE OF APPLICATION |
|---|---|---|
| Joseph Jones | Joseph Jones | 10/23/06 |

| APPLICANT'S ADDRESS | APPLICANT'S PHONE |
|---|---|
| P.O. Box Mastic, N.Y. 11950 | |

| NAME OF BUSINESS/FIRM | NAME OF CLIENT REPRESENTED |
|---|---|
| (NBTY) Nature's Bounty | Self |

CHECK 1A or 1B;    1A ☐ MOTOR VEHICLE ACCIDENT REPORT    1B ☑ OTHER REPORT/RECORD (Describe in item 2, below)

2. DESCRIPTION OF REPORT OR RECORD (IF OTHER THAN A MOTOR VEHICLE ACCIDENT REPORT)

Illness on Job Site

3. NAMES OF DRIVER(S)   N/A

| 4. NAME OF COMPLAINANT | 5. NAME OF VICTIM |
|---|---|
| Rob / security guard | Joseph Jones |

| 6. DATE OF OCCURRENCE | 7. PRECINCT NO. | 8. CC NUMBER |
|---|---|---|
| 11-6-04 | | 04-639084 |

| 9. LOCATION OF OCCURRENCE | 10. MAIL REPORT/RECORD TO: |
|---|---|
| 2005 Orville drive, Bohemia, NY. | Joseph Jones PO Box 244 Mastic NY 11950 |

## SECTION II   FOR USE BY DEPARTMENT FREEDOM OF INFORMATION OFFICER ONLY

☑ APPROVED

* ☐ APPROVED WITH REDACTIONS

* ☐ PARTIAL APPROVAL

* ☐ DENIED

☐ RECORD CANNOT BE FOUND AFTER DILIGENT SEARCH

☐ RECORDS ARE NOT POSSESSED OR MAINTAINED BY THIS AGENCY

☐ ADDITIONAL INFORMATION NEEDED _____

☐ THIS INCIDENT IS NOT WITHIN OUR JURISDICTION

☐ RECEIPT OF THIS REQUEST IS ACKNOWLEDGED. THERE WILL BE A DELAY IN SUPPLYING
THE REQUESTED RECORD UNTIL _____ FOR THE FOLLOWING REASON:

☐ OTHER _____

* SEE ATTACHMENT (PDCS-5414-1) FOR EXPLANATION

| SIGNATURE | TITLE: FREEDOM OF INFORMATION OFFICER | DATE |
|---|---|---|
| | | 1/18/07 |

YOU HAVE THE RIGHT TO APPEAL A DENIAL OF THIS APPLICATION IN WRITING TO THE OFFICE OF THE COUNTY ATTORNEY WITHIN 30 DAYS OF THE DENIAL. INFORMATION AS TO THE PERSON TO CONTACT IS SHOWN BELOW. THE CONTACTED PERSON MUST RESPOND TO YOU IN WRITING WITHIN TEN BUSINESS DAYS OF RECEIPT OF YOUR APPEAL.

## POLICE DEPARTMENT, COUNTY OF SUFFOLK, N.Y.
### FIELD REPORT PDCS - 1053a

| CENTRAL COMPLAINT NO. | PCT. OF OCC. | SECTOR | CAR NO. | |
|---|---|---|---|---|
| 04-639284 | 5 | 502 | 506 | 3024 |

**INCIDENT** 11050 CASE

| CODE 3028 | DAY OF OCC. FRI | DATE OF OCC. 11-5-04 | TIME OCC. 2330 |
|---|---|---|---|

| COMPLAINANT OR VICTIM Jones Josean | DOB - - | ☑M ☐F |
|---|---|---|

| ADDRESS 2005 Orville Dr. Bohemia | | TEL NO. 677 5452 |
|---|---|---|

**PLACE OF OCCURRENCE** SAA

| DATE OF REPORT 11-5-04 | TIME OUT 2333 | TIME ARRIVED 2340 | TIME IN 0000 | ☐ PERSON ☑ RADIO | ☐ SIGHT ☐ PCT |
|---|---|---|---|---|---|

| TOUR 9x7 3 | FOUNDED ☑ YES ☐ NO | REPORT TO FOLLOW NO | COMMAND - |
|---|---|---|---|

**DETAILS** ABOVE HAVING ALLERGIC REACTION
TO SEA-FOOD. TRANS. TO
BMH VIA SFD.

| ☐ ACTIVE | ☑ CLOSED (NON-CRIMINAL ONLY) | ☐ CLEARED BY ARREST |
|---|---|---|
| ☐ PENDING | | ☐ EXCEPTIONALLY CLEARED |

| POLICE OFFICER'S SIGNATURE | COMMAND | SUPERVISOR |
|---|---|---|
| J.M. | PO5174/5074 | Sgt 653 |

# COUNTY OF SUFFOLK



**STEVE LEVY**
**SUFFOLK COUNTY EXECUTIVE**

**DEPARTMENT OF LAW**
## HUMAN RIGHTS COMMISSION

**PAULETTE M. BARTUNEK**
**EXECUTIVE DIRECTOR**

**RABBI DR. STEVEN A. MOSS**
**CHAIRPERSON**

February 28, 2006

Mr. Joseph Jones
15 Washington Avenue
Mastic, NY 11950

Re:   NBTY, Inc.

Dear Mr. Jones:

The Suffolk County Human Rights Commission has carefully reviewed of your allegations of unlawful discrimination against the above-named Respondent. As I explained during our conversation on February 22, 2006, the Commission has determined that there is insufficient basis upon which to file a formal complaint at this time.

As such, we have closed our file effective today. If you should disagree with our determination and wish to pursue this matter further, you may contact the NY State Division of Human Rights by calling their regional office at (516) 538-1360. (See attached information which contains important information regarding filing deadlines).

Sincerely,

James Kokindo
Investigator

Enclosure

*EEOC rep=Sayra - 3/7/06*

*Mail or fax*

# COUNTY OF SUFFOLK



**STEVE LEVY**
**SUFFOLK COUNTY EXECUTIVE**

**DEPARTMENT OF LAW**
# HUMAN RIGHTS COMMISSION

PAULETTE M. BARTUNEK
EXECUTIVE DIRECTOR

RABBI DR. STEVEN A. MOSS
CHAIRPERSON

After thoroughly considering all the issues, the Suffolk County Human Rights Commission has made the determination which is explained in the enclosed letter.

Notwithstanding the above, if you still wish to pursue this matter, you may file your complaint with the New York State Division of Human Rights by calling their regional office at (516) 538-1360.  You should inform the intake worker at the Division that an informal inquiry has already been conducted by the Suffolk County Human Rights Commission.

In addition, if your complaint relates to an employment matter and the business employs more than 15 individuals, you may also contact the Equal Employment Opportunity Commission directly, at 1-800-669-4000, or  (212) 748-8500.

Please keep in mind that both of the above agencies require that you file a complaint within the time frames established by law.  In order to preserve your statutory rights, you should contact them as soon as possible.  The State Division of Human Rights can only accept a complaint that is filed within one year of the alleged incident, and you must file with the EEOC, if eligible, within 300 days of the alleged incident.

If you wish to contact a private attorney for advice and assistance, you can telephone the Suffolk County Bar Association's Lawyer Referral Service, at (631) 234-5577.  Ask to be referred to an attorney who specializes in employment law.

Joseph Jones
SSN:


*To Whom it may concern;*

*I, Joseph Jones am writing this letter in case the person who is reading the former pages cannot understand what I am saying. During my third shift on January 3rd of 2006, I was at work and in the process of working suddenly I realized that I was falling to the floor , I grabbed on to the shelves because I felt dizzy , when doing so I saw a energy drink that my former job (NBTY) sells and open it because I felt like I was going to collapse. After I had open the drink, my supervisor Charlie was walking towards me and he asked me if I had just opened the drink , I replied to him "yes I have just open the drink " and I explained why, while explaining why I have taken the drink from my work area he took me aside about 15-20 feet away from where we were first talking about the drink that I took from the job. He explained to me that I should've never taken the drink regardless of my circumstances, but when I had spoken to Charlie about me having seizures when I first started at nature's bounty in 2004 when he interview me for the job and again when the company had transferred me back to building 4320 to work for Charlie again he said to me that it would be fine whenever it was necessary during my shift to keep myself hydrated. However during that time, the water fountain was maybe 25-30 feet away from me and another fountain was around but I didn't know where it was located and I was dizzy and ready to collapse, Charlie had told me that there was no excuse for what I have done and although I said again that I would've paid for the drink that I have already taken, he replied "Do not do it again". I told him that I would have not taken the drink if I didn't have a good reason not too. He had also said to me not to worry about it after I had said that I do not want to lose my job over it. Then we both went separate ways to go back and do our jobs after he said do not worry about it. When I arrived at work on the fifth of January, the security guard Bob stopped me and told me that I have to wait until Charlie arrives to speak to me. Minutes later Charlie arrived and told me that I was suspended and he did not know for how long. On January 6th of 2006, I called Charlie at NBTY asking if I can return back to work he replied "NO! your fired" and then we hung up. After that day I called human resource and talked to Pam, she had told me over the phone that if there was medical documentation about myself having seizures then I would've never been fired. But in February 2005, my wife( Elizabeth) gave Nature's bounty documentations when I was in the hospital for seizures. I feel that I was under the disability act, wrongfully terminated. I have documentation from the time they tired to fire me before, in 2005.*

*Please if you have any question about this incident contact Abdul Ali (my 2005 supervisor from before I got transferred back to Charlie, he also knows about my seizures) his number is (631)244-2120 or contact me at (631)399-4953 or (631)739-3293*


*Sincerely ,*
*Joseph Jones*



**ROBERT A. LORENZO**
CHIEF ADMINISTRATIVE LAW JUDGE

**GEORGE T. DOLAN**
PRINCIPAL ADMINISTRATIVE LAW JUDGE

STATE OF NEW YORK
**UNEMPLOYMENT INSURANCE APPEAL BOARD**
ADMINISTRATIVE LAW JUDGE SECTION
P.O. BOX 697
NEW YORK NY 10014-0697
(212) 352-8982

*DECISION AND NOTICE OF DECISION*

MARGARET O'BRIEN
LAURANCE I. PAVER
LEONARD R. SHAPIRO
PAULA YORKE
HOWARD M. MEISELES
ALTERIO A. COLETTI
SENIOR ADMINISTRATIVE LAW JUDGE

A.L.J. Case No. 006-08623

Mailed and Filed: May 3, 2006

IN THE MATTER OF:

JOSEPH JONES
15 WASHINGTON AVE
MASTIC NY 11950

NBTY
2100 SMITHTOWN AVE.
RONKONKOMA NY 11779

JONATHAN PAUL FIELDING
129 3RD STREET
MINEOLA NY 11501

TALX UCEXPRESS
PO BOX 283
PO BOX283
SAINT LOUIS MO 63166-0283

Department of Labor Office: 831

Hearing Requested: April 06, 2006

**PLEASE TAKE NOTICE** that this decision has been duly mailed on the date listed above. If you appeared at the hearing and are not satisfied with this decision, you may appeal within **TWENTY DAYS** from the date this decision was mailed. Any party who failed to appear at the hearing has the right to apply to reopen the case. For the application to be granted, the party must apply within a reasonable time and must establish good cause for its failure to appear. **READ IMPORTANT INFORMATION ON REVERSE SIDE.**

**POR FAVOR TOME NOTA** que esta decisión ha sido debidamente enviada por correo en la fecha que aparece arriba. Si usted asistió a la audiencia y no está satisfecho con la decisión, usted puede apelar dentro de los **VEINTE DIAS** a partir de la fecha en que esta decisión fué enviada por correo. Cualquiera de las partes que falle en comparecer a la audiencia, tiene derecho de aplicar para que reabran su caso. Para que la apelación sea aceptada, la parte interesada debe aplicar dentro de un período de tiempo razonable y del establecer buena causa por no haber comparecido a la audiencia. **LEA INFORMACIÓN IMPORTANTE AL REVERSO.**

ISSUES:          Employer's objection to claimant's entitlement.
                 Loss of employment through misconduct.

        The Department of Labor issued the initial determination holding the claimant eligible to receive be
effective January 16, 2006.   The employer requested a hearing and objected that the claimant sho
disqualified from receiving benefits because the claimant lost employment through misconduct in con
with that employment and that wages paid to the claimant by such employer cannot be used to establish
claim for benefits.

A.L.J. Case No.006-08623        JOSEPH JONES        Page 3

FINDINGS OF FACT: The claimant worked, as a stock person, from February 23, 2004 until his last day on January 6, 2006. The employer sells vitamins and supplements and similar items. The claimant has epilepsy. On or about January 4, 2006, the claimant was seen with a sports drink in his hand by his supervisor. The claimant took the drink because his epilepsy requires that he be hydrated and he was filling dizzy. The claimant was fired for taking the drink.

OPINION: Pursuant to Labor Law § 593 (3), a claimant is disqualified from receiving benefits after having lost employment through misconduct in connection with that employment. Pursuant to Labor Law § 527, the wages paid in such employment cannot be used to establish a future claim for benefits.

The claimant provided credible testimony. In addition, the claimant provided medical documentation to confirm that he has epilepsy. I accept the claimant's testimony and evidence that he has epilepsy. I therefore conclude that the claimant's taking of the drink was due to his epilepsy and therefore not misconduct.

DECISION: The employer's objection, that the claimant should be disqualified from receiving benefits because the claimant lost employment through misconduct in connection with that employment and that wages paid to the claimant by such employer cannot be used to establish a future claim for benefits, is overruled.

The initial determination, holding the claimant eligible to receive benefits effective January 16, 2006, is sustained.

The claimant is allowed benefits with respect to the issues decided herein.

/s/ Craig Fishkin

**Administrative Law Judge**

**PG2**
**Mail Date: 01-23-2006**

**EFF.DT. 01-16-2006**     **LO#   831**
**SOCIAL SECURITY NO.**
**ER NO.   4337184**

1. Employer Name: Natures Bounty (NBTY)
   Address: 2100 Smithtown ave, Bohemia, N.Y.
   Telephone  631-244-2120
   Name of Supervisor:  Charlie

2. How long did you work for this employer? 1 Years  11 Months  3 Days

3. What was the last date you worked for this employer? 1/3/06

4. What was your rate of pay? $ 10.50
   ✓ per hour __ per day __ per week __ per year.

5. What were your hours and days of work?
   Hours:   From: 11 P.M.   To: to 7.30 a.M.
   Days: Monday - Saturday.

6. What kind of work did you do? (Job Title)
   Inventory control clerk

7. Who told you that you were being fired?
   Name Charlie / Pam from (HR) at Natures Bounty (HQ)
   Title: Supervisor
   When were you told this? 1/6/06
   What were you told would be your last day of work? I was told that I was
   uspended on 1/4/06 and on 1/6/06 I was told that I was fired and to
   8. What reason(s) were you given by your employer for being fired? drop my     badge off.
   ~~their~~ ~~the theft~~

9. If you were accused for violating a company rule, policy or procedure, what explanation or reason did you give i
   response?
   This was due to me fainting. I told charlie that
   I needed to be constantly hydrated and that I would've
   payed for the drink. Paid for the drink. Because of the
   medicine that I take for my seizures.

10. What reason did your employer give you for not accepting your explanation or denial?
   He said I do not care. You are not allowed to take anything
   that we sell. He had told me that the issue was over and
   that he understood why I did it.

11. What was the final incident that resulted in your fire? (Please describe in detail.) I had called charlie
   on 1/6/06 before ar heading to work when he told

EFF.DT. 01-16-2006     LO#   831

**PG3**                      SOCIAL SECURITY NO.
**Mail Date: 01-23-2006**    ER NO.  4337184

Charlie had told Human Resources Pam who
told Charlie to fire me and everyone else who
was his boss and in charge.

12. Did you receive any written or spoken warnings? ✓ YES ___ NO.
   If yes, when were you warned? The day before I was fired he said it was
   By whom? Name: Charlie          would be fine don't worry.
   Title: Supervisor

13. Did your employer say you were fired for violation of a company rule, regulation or policy?
   ✓ YES ___ NO. If yes, what rule?
   Thieft.

14. Were you aware of this rule? ✓ YES ___ NO  If yes, explain why you did not follow it.
   I had no way of reaching a drink. other than the
   one that I had picked up.

15. Did you file a grievance regarding the fire? ✓ YES X NO
   If yes, with whom (employer, union, etc.)? However I did not on paper.
   With what results?                    By the phone spoke to Pam.
   I was told by many associates that when they had problems
   with Charlie and told Human Resource that they did nothing
   but ignore it because he does more than his job with the work

Include supporting documents for your fire.

I certify that these statements are true to the best of my knowledge and I am aware that there are penalties provided
for making false statements. I understand that I have the right to correct any statements on this form; that I may
refuse to sign it, and that it may be used in a hearing involving my claim.

Clamiant's Signature: Joseph Jones

Date: 1/31/06          Telephone Number: 631-399-4953



**U.S. Equal Employment Opportunity Commission**
**New York District Office - 520**

33 Whitehall Street
5th Floor
New-York, NY 10004
(212) 336-3620
TTY (212) 336-3622
FAX (212) 336-3625
1-800-669-4000

Respondent: NATURE'S BOUNTY, INC.
EEOC Charge No.: 520-2006-02611
FEPA Charge No.:

RECEIVED
JUL 2 5 2006
EEOC-NYDO-ENFORCEMENT

July 18, 2006

Joseph  Jones
15 Washington Avenue
Mastic, NY 11950

Dear Mr. Jones:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent.  Please use the "EEOC Charge No." listed above whenever you call us about this charge.   The information provided indicates that the charge is subject to:

    [ ]     Title VII of the Civil Rights Act of 1964 (Title VII)

    [ ]     The Age Discrimination in Employment Act (ADEA)

    [ X ]   The Americans with Disabilities Act (ADA)

    [ ]     The Equal Pay Act (EPA)

You need do nothing further at this time.  We will contact you when we need more information or assistance.  A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

    [X]     Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures.  If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official.   Then the agency will investigate and resolve the charge under their statute.  If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding.  To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case.

New York State Division Of Human Rights
Federal Contract Unit
One Fordham Plaza, 4 Fl.
Bronx, NY 10458

Please notify this office of any change in address or of any prolonged absence from home.  Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

Joan  Marchese
Investigator
(212) 336-3782


Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
TDD: 1-800-669-6820
www.eeoc.gov

Enclosure(s)

**ORIGINAL**

| ARGE OF DISCRIMINATION | AGENCY | CHARGE NO. |
|---|---|---|
| ...his form is affected by the Privacy Act of 1974;  See Privacy Act Statement before completing this form | ✓ FEPA<br>✓ EEOC | 520-2006-02|61/ |

**Equal Employment Opportunity Commission**

| Joseph Jones | (631) 269-6475 |
|---|---|
| 15 Washington Avenue, Mastic, NY 11950 | DOB: |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, State or Local Government Agency Who Discriminated Against Me (If more than one, list below).

Nature's Bounty, Inc.

90 Orville Drive, Bohemia, NY 11716

No. of Employees: **500+**  Telephone No.: (631) 567-9500  County: **Suffolk**

RECEIVED JUN 2 9 2006 EEOC-NYDO-EN...

CAUSE OF DISCRIMINATION BASED UPON:

| ___ RACE | ___ COLOR | ___ SEX | ___ RELIGION | ___ AGE |
|---|---|---|---|---|
| ___ RETALIATION | ___NATIONAL ORIGIN | X DISABILITY | ___ OTHER | |

DATE DISCRIMINATION TOOK PLACE:   EARLIEST:      LATEST: 1/6/2006    _ CONTINUING ACTION

1. I am a 28 year old male epileptic.

2. I began working for the above employer on February 23, 2004, when I was hired as a stock person in Department 301.

3. At the interview at which I was hired, I informed the employer that I have epilepsy.

4. On or about February 14, 2005, I suffered from an acute episode of epilepsy in which I had grand mal seizures.  I was hospitalized for two weeks, from February 14 through February 28.

5. On or about March 1, 2005, I returned to work, and I provided my employer with notes from my doctor documenting my illness.  My supervisor, Abdul Ali told me that I had been fired and that Nature's Bounty, Inc. had sent a letter to my home. When I asked Mr. Ali why I had been terminated, he told me that I did not qualify for Family Medical Leave Act leave because I had not been employed for one year.

6. Notwithstanding Mr. Ali's remarks, I continued to work at Nature's Bounty, Inc..

7. I take prescription medication to keep my epilepsy in check.  When I take my medication, I experience difficulties with hydration, dizziness, drowsiness and shakes.  Because of these side effects, I need to regularly drink fluids, especially when exerting myself.

8. In or about March 2005, I informed my supervisor, Mr. Ali, about the limitations I experience as a result of the side effects of my medication and I asked for a reasonable accommodation - that I be allowed to drink fluids when necessary for my medical condition.

9. On or about December 12, 2005, I was transferred to Department 308, where I would work as a stock person.  As a stock person, my duties included heavy lifting and exertion.  My new supervisor was Mr. Charles Treibel.

10. I explained to Mr. Treibel about the reasonable accommodation that I required in order to safely work.

11. At the warehouse to which I was transferred, employees were not allowed to carry drinks on the work floor. There was only one water fountain on the work floor.

12. On or about January 4, 2006, while I was working, I became dehydrated and suddenly felt extremely dizzy and weak. I experienced an "aura", the sensation that normally warns me that I am about to have an epileptic seizure. I knew that I had to rehydrate myself as quickly as possible to try to prevent the seizure. I took a bottle of sports drink from the stock shelf and immediately drank it.

13. My supervisor, Mr. Treibel, saw what happened and told me I couldn't steal product. I offered to pay for it and told Mr. Treibel that I needed to rehydrate myself and probably would not have made it to the water fountain. Mr. Treibel took the drink away from me and told me not to worry about it.

14. On January 6, 2006, I was terminated for "stealing product" from Nature's Bounty, Inc..

WHEREFORE, Respondent discriminated against me in violation of the Americans with Disabilities Act of 1990.

I want this charge filed both with the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

X

Date:

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

X *[signature]*

Sworn to before me this date:
(Day, month, year) 27ᵗʰ of June, 2006

*[signature]*

JONATHAN PAUL FIELDING
NOTARY PUBLIC-STATE OF NEW YORK
No. 02FI6126725
Qualified in Nassau County
Commission Expires May 09, 2009

RECEIVED
JUN 2 9 2006
EEOC NYDO ENFORCEMENT



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Phone: (212) 336-3620
General Fax: (212) 336-3625
TTY: (212) 336-3622

Joan Marchese
Investigator
Phone (212) 336-3782
Fax (212) 336-3790

November 21, 2006

Jonathan Paul Fielding, Esq.
129 Third Street
Mineola, New York 11501

Re:   Joseph Jones v. Nature's Bounty, Inc.
      Charge No.  520-2006-02611

Dear Mr. Fielding:

In furtherance to our investigation of the above referenced charge, I would like to get some additional information as listed below:

1.    When Charging Party was initially hired and assigned to Department 301, explain how he was able to stay hydrated?  Did he request any accommodation as to his need to have access to fluids?  If yes, who did he make the request to and what specific accommodation was provided to him?

2.    How often must Charging Party take his medicine during the day?

3.    If not stated elsewhere, while assigned to Department 301, was Charging Party allowed to carry a bottle of water?   How did Charging Party obtain this water?

4.    When Charging Party was assigned (on or about March 21, 2004) to another department and reported to Mr. Ali, did he request a reasonable accommodation?  If yes, detail what accommodation was requested and what was permitted by Respondent?

Please provide the requested information on or before December 5, 2006.

Sincerely,

Joan Marchese
Senior Investigator

# JONATHAN PAUL FIELDING
*Attorney and Counselor at Law*

129 Third Street
Mineola, New York 11501
Phone: (516) 479-0859
Fax: (917) 522-9592
Email: jfiel876@gmail.com

December 1, 2006

<u>VIA FACSIMILE & FIRST-CLASS MAIL</u>

Equal Employment Opportunity Commission
Attn: Joan Marchese
33 Whitehall Street, 5th Floor
New York, NY 10004-2112

RE:    <u>Joseph Jones v. Nature's Bounty, Inc.</u>
<u>Charge No. 520-2006-02611</u>

Dear Ms. Marchese:

As you know, I represent Joseph Jones, the Charging Party (hereinafter "Joseph") in the above referenced matter. This letter is in response to your inquiry dated November 21, 2006.

*1.      When Charging Party was initially hired and assigned to Department 301, explain how he was able to stay hydrated? Did he request any accommodation as to his need to have access to fluids? If yes, who did he make the request to and what specific accommodation was provided to him?*

1.      When the Charging Party was initially hired and assigned to Department 301, he had difficulty staying hydrated. The Charging Party had to go to the cafeteria or the water fountain when he was allowed to do so. The Charging Party requested an accommodation to his supervisor, Charlie Triebel, and he was told that he should go to the water fountain or cafeteria because he was not allowed to carry a drink with him. The Charging Party made his request to Charlie Triebel, stating that he needed to carry a drink with him at all times, but his request was not granted.

2.      *How often must the Charging Party take his medicine during the day?*

2.      The Charging Party currently takes his medicine twice: once in the morning and the other dose at night.  While the Charging Party was working for the Respondent, he had to take his medication three times per day.

3.      *If not stated elsewhere, while assigned to Department 301, was Charging Party allowed to carry a bottle of water?  How did Charging Party obtain this water?*

3.      See response to question 1.

4.      *When Charging Party was assigned (on or about March 21, 2004) to another department and reported to Mr. Ali, did he request a reasonable accommodation?  If yes, detail what accommodation was requested and what was permitted by Respondent?*

4.      When Charging Party was assigned to the other department, under Mr. Ali, he requested a reasonable accommodation from Mr. Ali.  The Charging Party asked Mr. Ali if he could carry a drink with him at all times and told him that he had to take his medicine at certain times and that he needed to stay hydrated.  The Respondent allowed the Charging Party to carry a bottle of water or Gatorade in a plastic bottle with him at all times while on the job site.

           I hope that this information is helpful to you in your investigation.  If you require any additional information please do not hesitate to contact me.  Thank you for your consideration and cooperation in this matter.


                                   Very truly yours,


                                   Jonathan Paul Fielding


JPF:kb
cc:      Joseph Jones



609661005001

# TALX

## UC eXpress™

April 03, 2006

RECEIVED
UNEMPLOYMENT INSURANCE DIVISION
APR 0 6 2006
U.I. REC  ⋅CTION
TCC CENTRAL SUPPORT UNIT

NEW YORK STATE DOL          OFFICE 12212
PO BOX 15131
ALBANY  NY  12212-5131

RE:  JOSEPH JONES                    Account:  43-37184-2
SS:                                  Employer:  NBTY, INC.

Dear State Representative:

This is in reference to form , Notice of Determination, dated March 7, 2006 which allows benefits to the above individual.  We wish to appeal the determination based on the following.

The claimant was discharged for violation of a reasonable and known policy. The claimant removed a drink without payment or authorization and when confronted with incident advised that they had done so because they were thirsty and not because of a medical condition and in fact never at any time during their employment or termination sited a physical condition that required hydration. This action was in direct disregard of the employer's best interest and benefits should be denied.

Be advised, TALX UCM Services, Inc., UC eXpress(SM) is a duly authorized agent empowered to act on behalf of the above employer.  Any correspondence related to this individual should be mailed to: P.O. Box 283, St. Louis, MO 63166-0283.

For additional information, please contact me at (800) 366-6660 or (314) 684-2570, ext.  or you can reach me via email at dlentes@talx.com or fax (314) 983-3570.

Thank you for your time and consideration.

Sincerely,

Douglas Lentes
Lead Claims Service Representative
I, PM

RECEIVED
UNEM⋅        ⋅⋅NCE DIVISION
APR 0 6 2006
U..           ON
TCC CENTRA    ⋅⋅ UNIT



**ROBERT A. LORENZO**
CHIEF ADMINISTRATIVE LAW JUDGE

**GEORGE T. DOLAN**
PRINCIPAL ADMINISTRATIVE LAW JUDGE

STATE OF NEW YORK
## UNEMPLOYMENT INSURANCE APPEAL BOARD
### ADMINISTRATIVE LAW JUDGE SECTION
P.O. BOX 697
NEW YORK NY 10014-0697
(212) 352-6982

*DECISION AND NOTICE OF DECISION*

MARGARET O'BRIEN
LAURANCE I. PAVER
LEONARD R. SHAPIRO
PAULA YORKE
HOWARD M. MERKELES
ALTIERO A. COLETTI
SENIOR ADMINISTRATIVE LAW JUDGE

A.L.J. Case No. 006-08623

IN THE MATTER OF:

**JOSEPH JONES**
**15 WASHINGTON AVE**
**MASTIC NY 11950**

Mailed and Filed: May 3, 2006

**NBTY**
**2100 SMITHTOWN AVE.**
**RONKONKOMA NY 11779**

**JONATHAN PAUL  FIELDING**
**129 3RD STREET**
**MINEOLA NY 11501**

**TALX UCEXPRESS**
**PO BOX 283**
**PO BOX283**
**SAINT LOUIS MO 63166-0283**

Department of Labor Office: 831

Hearing Requested: April 06, 2006

---

**PLEASE TAKE NOTICE** that this decision has been duly mailed on the date listed above. If you appeared at the hearing and are not satisfied with this decision, you may appeal within **TWENTY DAYS** from the date this decision was mailed. Any party who failed to appear at the hearing has the right to apply to reopen the case. For the application to be granted, the party must apply within a reasonable time and must establish good cause for its failure to appear. **READ IMPORTANT INFORMATION ON REVERSE SIDE.**

**POR FAVOR TOME NOTA** que esta decisión ha sido debidamente enviada por correo en la fecha que aparece arriba. Si usted asistió a la audiencia y no está satisfecho con la decisión, usted puede apelar dentro de los **VEINTE DIAS** a partir de la fecha en que esta decisión fué enviada por correo. Cualquiera de las partes que falte en comparecer a la audiencia, tiene derecho de aplicar para que reabran su caso. Para que la apelación sea aceptada, la parte interesada debe aplicar dentro de un período de tiempo razonable y debe establecer buena causa por no haber comparecido a la audiencia. **LEA INFORMACIÓN IMPORTANTE AL REVERSO.**

---

ISSUES:          Employer's objection to claimant's entitlement.
                 Loss of employment through misconduct.


The Department of Labor issued the initial determination holding the claimant eligible to receive benefits, effective January 16, 2006.  The employer requested a hearing and objected that the claimant should be disqualified from receiving benefits because the claimant lost employment through misconduct in connection with that employment and that wages paid to the claimant by such employer cannot be used to establish a future claim for benefits.

A hearing was held at which testimony was taken. There were appearances by the claimant and on behalf

A.L.J. Case No.006-08623          JOSEPH JONES                    Page 2
### NOTICE OF DECISION

## CLAIMANTS

**IF YOU DISAGREE WITH THIS DECISION, YOU HAVE A RIGHT TO APPEAL TO THE UNEMPLOYMENT INSURANCE APPEAL BOARD.**

Parties may be represented by lawyers or other persons of their choice on appeal to the Appeal Board. For representing a claimant, a lawyer or an agent registered by the Appeal Board may charge a fee. The fee must be approved by the Appeal Board before payment m be accepted by such lawyer or agent. No other person may charge a fee for representing a claimant. If you do not have enough money hire a lawyer or registered agent, you may be able to get one free through your local Legal Aid Society or Legal Services Program.

### TO APPEAL A DECISION

1.    Continue to follow all instructions from the Unemployment Insurance office where you originally filed your claim and to certify benefits as long as you are unemployed and claiming benefits. This will protect your rights to any benefits you claim.

2.    Within twenty (20) days of the date printed on the face of this decision, mail a letter to the office where you originally filed you claim or to the Appeal Board at P.O. Box 15126, Albany, New York 12212-5126, or fax your appeal to the Appeal Board at (51 402-6208. Please state that you wish to appeal and the reasons for your appeal. Include your ALJ Case Number (found just above your name on the face of the Notice of Decision) and a copy of the Notice of Decision.

3.    Claimants who appeal are **not** required to pay a deposit on filing an appeal.

### EMPLOYERS

If you wish to appeal this decision, you may file a notice of appeal within twenty (20) days from the date printed on the face of this decisi to the office where the claim was originally filed and which issued the initial determination, or to the Unemployment Insurance Appeal Board at P.O. Box 15126, Albany, New York 12212-5126, or you may fax your notice of appeal to the Appeal Board at (518) 402-6208 Such notice of appeal should include the A.L.J. Case Number (found on the face of this Notice of Decision), the reason(s) for the appe and a copy of the Notice of Decision.

**ALL PARTIES WILL RECEIVE A NOTICE OF RECEIPT OF APPEAL DIRECTLY FROM THE APPEAL BOARD AFTER ANY APPEAL IS MADE.**

### INSTRUCCIONES A LOS RECLAMANTES

## RECLAMANTES

**SI NO EST" DE ACUERDO CON ESTA DECISIPN, USTED TIENE DERECHO DE APELARLA A LA JUNTA DE APELACIONES DEL SEGURO POR DESEMPLEO.**

Las partes si lo desean, pueden estar representadas por abogados u otras personas que ellos seleccionen en la apelación a la Junta d Apelaciones (Appeal Board). Un abogado o un agente que esté registrado por la Junta de Apelaciones, puede cobrale honorarios por representarle. Estos honorarios deben ser aprobados por la Junta de Apelaciones antes que el pago pueda ser aceptado por dicho abogado o agente registrado. Ninguna otra persona podrá cobrar honorarios por representar al reclamante. Si usted no tiene suficient dinero para contratar a un abogado o un agente registrado, puede conseguir uno gratis a través de la Sociedad de Asistencia Legal (Legal Aid Society) o el Programa de Servicios Legales (Legal Services Program).

### PARA APELAR LA DECISIPN

1.    Continúe siguiendo todas las instrucciones de la oficina del Seguro por Desempleo (Unemployment Insurance) donde usted presentó su reclamo originalmente y para certificar por los beneficios mientras permanezca desempleado y esté reclamando beneficios. Esto protegerá su derecho a recibir cualquier beneficio que reclame.

2.    Antes de cumplirse veinte (20) días de la fecha que aparece al frente de esta decisión, envíe una carta a la oficina donde presentó originalmente su petición o al Appeal Board a P.O. Box 15126, Albany, New York 12212-5126, o envíe por fax su apelación al Appeal Board al (518) 402-6208. Por favor, explique que desea apelar y las razones que tiene para hacerlo. Incluy su número de caso ALJ (lo encontrará justo encima de su nombre al frente de este Aviso de Decisión) y envíe una copia de est Aviso de Decisión.

3.    Los reclamantes **no** necesitan depositar dinero para poder apelar su caso.

**TODAS LAS PARTES RECIBIR"N UN AVISO DE RECIBO DE APELACIPN DIRECTAMENTE DE LA JUNTA DE APELACIONES DESPU1S DE QUE SU PETICION SEA RECIBIDA.**

AR 605 (02-08)

A.L.J. Case No.006-08623            JOSEPH JONES                      Page 3

**FINDINGS OF FACT:** The claimant worked, as a stock person, from February 23, 2004 until his last day on January 6, 2006. The employer sells vitamins and supplements and similar items. The claimant has epilepsy. On or about January 4, 2006, the claimant was seen with a sports drink in his hand by his supervisor. The claimant took the drink because his epilepsy requires that he be hydrated and he was filling dizzy. The claimant was fired for taking the drink.

**OPINION:** Pursuant to Labor Law § 593 (3), a claimant is disqualified from receiving benefits after having lost employment through misconduct in connection with that employment. Pursuant to Labor Law § 527, the wages paid in such employment cannot be used to establish a future claim for benefits.

The claimant provided credible testimony. In addition, the claimant provided medical documentation to confirm that he has epilepsy. I accept the claimant's testimony and evidence that he has epilepsy. I therefore conclude that the claimant's taking of the drink was due to his epilepsy and therefore not misconduct.

**DECISION:** The employer's objection, that the claimant should be disqualified from receiving benefits because the claimant lost employment through misconduct in connection with that employment and that wages paid to the claimant by such employer cannot be used to establish a future claim for benefits, is overruled.

The initial determination, holding the claimant eligible to receive benefits effective January 16, 2006, is sustained.

The claimant is allowed benefits with respect to the issues decided herein.


/s/ Craig Fishkin
_____
**Administrative Law Judge**